Case: 2:18-cv-00218-SDM-KAJ Doc #: 1-1 Filed: 03/14/18 Page: 1 of 20 PAGEID #: 1170
0D898 - J8
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010167

COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | |
|---|---|
| P. JONATHAN MEYER<br>85 Stanbery Avenue<br>Bexley, Ohio 43209<br><br>and<br><br>MARK POTTSCHMIDT<br>2048 Wickford Road<br>Columbus, Ohio 43221<br><br>and<br><br>RAYMOND BRUNT<br>1423 Winesap Drive<br>Manasquan, NJ 08736<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA<br><br>c/o CT Corporation System, Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>Defendant. | Case No. _____<br><br><br><br>Judge _____ |

## COMPLAINT FOR DECLARATORY RELIEF

For their Complaint against Defendant Bank of America, Plaintiffs P. Jonathan Meyer, Mark Pottschmidt, and Raymond Brunt (collectively, "Plaintiffs") aver as follows:

### INTRODUCTION

1. This is an action for declaratory relief in order to determine the rights and obligations of Plaintiffs and Defendant under the terms of numerous identical Assignment of Proceeds agreements (collectively, the "Assignments"). Pursuant to Civil Rule 10, Plaintiffs

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 2 of 20 PAGEID #: 1171
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J9

note such instruments are omitted inasmuch as they are voluminous and in the possession of Defendant.

## THE PARTIES

2. Plaintiff P. Jonathan Meyer is an individual residing in Franklin County, Ohio.

3. Plaintiff Mark Pottschmidt is an individual residing in Franklin County, Ohio.

4. Plaintiff Raymond Brunt is an individual residing in Monmouth County, New Jersey.

5. Plaintiffs are partners in numerous real estate development companies, having developed numerous shopping centers across the country through various Stanbery companies.

6. Defendant Bank of America is a Delaware company that is registered to, and regularly does, conduct business in Franklin County, Ohio.

## JURISDICTION AND VENUE

7. The Court has jurisdiction and venue over this matter because it involves a dispute involving individuals from Franklin County, Ohio, the transaction between the parties occurred in Franklin County, Ohio, and Section 8(d) of the Assignments provides that Plaintiffs and Defendant "specifically and irrevocably consent to the jurisdiction and venue of the federal and state courts of the State [of Ohio] with respect to all matters concerning the Assignment[s]."

## FACTUAL BACKGROUND

**A. LaSalle Makes Loans To Companies That Become Upside Down During The Economic Collapse Of 2008.**

8. Between 2004 and 2007, LaSalle Bank prior to its acquisition by Defendant made a series of loans to Stanbery related entities, including Stanbery Development, LLC, Stanbery Wyomissing, LP, Stanbery Hamilton, LLC, Coconut Creek Development, LLC, and Stanbery Coconut Creek, LLC.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 3 of 20 PAGEID #: 1172
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 19 2:25 PM-17CV010107
0D898 - J10

9. The funds from the loans were used for the construction and operation of a number of properties, including The Shoppes at Wyomissing, The Shoppes at Hamilton, and The Promenade at Coconut Creek (collectively, the "Distressed Properties").

10. Plaintiffs served as guarantors for loans for the Distressed Properties.

11. In 2008, the United States experienced a significant economic downturn and the once robust real estate market dramatically took a turn for the worse. Developers all across the country agreed to deed back properties to lenders and many others simply declared bankruptcy. The Distressed Properties were not immune from the downturn and quickly found themselves under water financially, due to a number of factors including tenants not honoring their leases, retailers closing, and leasing that did not materialize as expected.

**B. Plaintiffs Restructure The Relationship Instead Of Negating Defendant's Interest Through Foreclosure And Bankruptcy.**

12. Bankruptcy and abandoning the Distressed Properties were options for Plaintiffs. However, instead of simply pursuing those options, Plaintiffs engaged Defendant to discuss a potential course of action whereby Plaintiffs would maintain control of the properties and incur further costs and risk in an attempt to weather the storm of the economic downturn, in exchange for Defendant releasing their guarantor liability, settling the loans and agreeing to potentially receive a small portion of the net sale proceeds of sales of some of Plaintiffs' interests.

13. Specifically, Defendant agreed that in exchange for resolving the outstanding loans and guarantees it would accept the potential to receive a small percentage of net proceeds from each Plaintiffs' interest in each of the following four properties: (1) Union Hill, (2) Harrisburg, (3) English Village and (4) Old Bridge (collectively, the "Properties").

14. Plaintiffs and Defendant agreed that the Properties had little to no positive value after debt and thus settled upon a net proceeds calculation that: (a) was to be performed

3

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 4 of 20 PAGEID #: 1173
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J11

following the sale of each property; (b) involved only a small percentage of the assignor's interest; (c) would deduct all closing costs; (d) would deduct the substantial taxes paid the assignor; (e) would escrow net proceeds, if any, within days of the disposition of each of the Properties; and (f) would disburse any net proceeds only after the sale of all four Properties on an assignor-by-assignor basis and only if there was a positive balance in each assignor's account.

15. Given the number of banks having a participant interest in the various loans, the three assignors executed a total of sixty (60) Assignments[1] on the same date and as part of the same transaction.

16. On September 30, 2010, Plaintiffs and Defendant executed numerous settlement documents, including the sixty (60) Assignments. In advance of the closing of the settlement documents, there was considerable communication and dialogue between Plaintiffs and Defendant about the structure of the Assignments, the scope of the assigned net proceeds and the fact that any net proceeds would be escrowed by individual for all Properties.

C. **The Assignment Of Proceeds "Sales Proceeds" Calculation.**

17. Section 1(a) of each Assignment provides that the "Assignor hereby irrevocably assigns, transfers and conveys to Lender...[a certain percentage] of the Sale Proceeds."

18. Section 1(a)(i) provides the sales proceeds calculation:

"Sales Proceeds" means an amount equal to: (a) the cash and non-cash proceeds (including any cash received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received) received by the Company and/or the Assignor from a Sale, minus (b) any out-of-pocket costs (including, without limitation, reasonable and customary transaction costs associated with the Sale) incurred by the Company directly in connection with such Sale, including (i) income or gains taxes actually payable by the Company or Assignor as a result of any gain recognized in connection with such Sale, without regard to losses, deductions or credits unrelated to such Sale which might otherwise affect the actual taxes payable, and (ii) payment of the

---

[1] While 60 Assignments were executed, a portion of those Assignments were terminated on July 29, 2011.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 5 of 20 PAGEID #: 174
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010167
0D898 - J12

outstanding principal amount of, premium or penalty, if any, and interest on that certain indebtedness pursuant to that certain Mortgage, Security Agreement and Fixture Filing, dated as of June 7, 2007, from the Company, as Borrower, to LaSalle Bank National Association, as Lender, as amended, modified, assigned, replaced or substituted, that is required to be repaid under the terms of such indebtedness as a result of the Sale.

19. The Agreement was clear: "No later than three (3) days following the receipt by Company of any Sales Proceeds, the Company shall, and Assignor shall cause the Company to, pay to the Escrow Agent on behalf of Assignor, the Allocated Percent of such Sale Proceed to which Assignor would be entitled if the Company distributed such Sales Proceeds to its partners, whether or not the Company makes such distribution." Assignment, Section 1(c)(ii).

20. Each Assignor under the Assignment had a "single, separate and distinct account" for that Assignor which served as that Assignor's escrow account for all sales of the Properties. Assignment, Section 1(d)(i).

### D. Plaintiffs Provide Defendant Calculations Of Sales Proceeds Starting In 2015.

21. The Plaintiffs and Defendant had numerous communications and conversations about the Assignments, the net proceeds calculations, and escrowed amounts. In fact, Plaintiffs kept in close communication with Defendant, providing Defendant updates and forecasts following the execution of the Assignments and regularly engaged Defendant in dialogue and promptly responded to Defendant's questions about the potential sales, escrowed amounts and net proceeds.

22. Without exception, Plaintiffs provided timely and accurate reporting in terms of any qualifying sales under the Assignments. This included:

    a. On July 15, 2013, in connection with a refinance of the Union Hill property, Plaintiffs escrowed $85,670 pursuant to the terms of the Assignment. Further,

5

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 6 of 20 PAGEID #: 1175
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J13

on January 1, 2014, in connection with the refinancing of English Village, Plaintiffs' escrowed $46,429 consistent with the terms of the Assignments. The English Village and Union Hill escrowed amounts remain in escrow (the "Escrowed Amounts").

b. On May 15, 2015, Plaintiff's counsel provided Defendant the tax calculation in connection with the deed in lieu transaction on the Old Bridge property. In providing that calculation showing a substantial tax impact to the Plaintiffs, counsel stated "I suggest that the tax deduction be used when we settle up in 2018, unless, of course, the centers are all sold before then." Defendant agreed to no further escrowing other than the Escrowed Amounts.

c. On June 10, 2015, Plaintiffs provided Defendant the calculation of the sales proceeds for the Harrisburg property. The calculation provided to Defendant reflected a net tax loss for each of the Plaintiffs. Defendant agreed to no further escrowing other than the Escrowed Amounts.

d. On June 15, 2016, Plaintiffs provided Defendant the calculation of the sales proceeds for the Union Hill property. The calculations addressed all three of the properties sold to date and reflected a net loss for Plaintiffs Meyer and Brunt and a $174,988 net sale proceed for Plaintiff Pottschmidt; however, the tax impact for the other sold Properties still resulted in a net loss even after taking into account the Escrowed Amounts. Defendant received the information on the net sales proceeds, understood that no amounts were being escrowed, and understood that the only amounts escrowed were the Escrowed Amounts.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 1-1 Filed: 03/14/18 Page: 7 of 20 PAGEID #: 76
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J14

23. From the time the Escrowed Amounts were escrowed through each of the notices of sales and net proceeds calculations, Plaintiffs maintained regular and open communications with Defendant and its counsel, Miller Canfield.

24. Defendant regularly and routinely communicated its appreciation to Plaintiffs for the reporting and disclosures Plaintiffs continued to provide throughout the process and in excess of the reporting required under the Assignments.

25. Plaintiffs continued to make its business and investment decisions based upon the calculations of net proceeds and the response and dialogue they were receiving from Defendant.

### E. Defendant Does An About-Face And Claims Plaintiffs Defaulted On The Assignments.

26. Unfortunately, Defendant's representatives handling this matter, both at the Bank and its counsel handling the matter at Miller Canfield, left and were no longer involved with the relationship by August 2017.

27. On August 30, 2017, Plaintiff's counsel received a communication from a new attorney from Miller Canfield, the law firm that had received and reviewed the calculations and Escrowed Amounts for quite some time. Mr. Allen sent the letter, attached as Exhibit A, claiming, for the first time, that Plaintiff's breached the Assignments.

28. Plaintiffs' counsel responded, Exhibit B, stating that Defendant waived its right to challenge the calculations provided to Defendant long ago but requested the calculation Defendant believed applied to the recently sold English Village property. Defendant's counsel acknowledged that such a calculation exists but that an accountant was checking his work.

29. Instead of simply providing the calculation, Defendant requested a massive amount of documents, many of which Miller Canfield had received and reviewed months earlier.

7

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 8 of 20 PAGEID #: 1177
0D898 - J15
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107

30. Finally, on October 24, 2017, Defendant finally provided its calculation of the alleged Sales Proceeds it believed were required to be escrowed pursuant to the Assignments. Despite accepting the Escrowed Amounts as the only amounts escrowed over the past two years, Defendant suddenly demanded that $1.6 million dollars be escrowed by employing a calculation far different than that set forth in Section 1 of the Assignments and bearing no resemblance to any discussion between Plaintiffs and Defendant during the negotiation of the original transaction.

31. Plaintiffs disagree with Defendant's calculation, do not believe they have defaulted on any obligation as alleged by Defendant, and do not believe that any additional monies are required to be escrowed as a result of the English Village sale.

## COUNT ONE

### (Declaratory Relief: The Calculation Of Sales Proceeds Under The Assignments)

32. Plaintiffs re-allege, incorporate, and adopt the allegations contained in the foregoing allegations of the Complaint.

33. For the past two years, Plaintiffs have provided Defendant their calculations of the Sales Proceeds which Defendant has accepted without objection.

34. On October 24, 2017, Defendant, for the first time, claimed that Sales Proceeds are calculated differently than Plaintiff had disclosed over the past two years or had been discussed between the parties, now claiming that over $1.6 million dollars are due pursuant to Defendant's calculation.

35. Given these issues, a justiciable controversy exists and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute. As

8

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 9 of 20 PAGEID #: 178
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J16

alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

36. Plaintiffs, therefore, request a declaratory judgment from this Court that: (1) the Sales Proceeds for English Village are calculated consistent with Plaintiffs calculation of Sales Proceeds; (2) that Plaintiffs do not have any obligation to escrow any further funds as a result of the sale of the Properties; and (3) that the Escrowed Amounts be returned to Plaintiffs as a result of the negative net proceeds from the sale of the Properties.

## COUNT TWO

### (Declaratory Relief: Waiver)

37. Plaintiffs re-allege, incorporate, and adopt the allegations contained in the foregoing allegations of the Complaint.

38. Plaintiffs provided written disclosure and notice of the Sales Proceeds calculations for (a) Old Bridge on May 15, 2015, (b) Harrisburg on June 10, 2015; and (c) Union Hill on June 15, 2016, as well as multiple times throughout the relationship.

39. Defendant possessed full knowledge of, and access to, all relevant facts; was aware of its rights under the Assignments; and maintained regular and open communications with Plaintiffs. Yet, Defendant never objected to Plaintiffs' calculation of the Sales Proceeds for Old Bridge, Harrisburg or Union Hill until Defendant changed counsel and sent the August 2017 Letter.

40. By its actions and conduct, Defendant intentionally and voluntarily relinquished its right to challenge such calculations if, indeed, Defendant believed they were incorrect. Defendant waived its right to challenge the Sales Proceeds calculation for Old Bridge,

9

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 10 of 20 PAGEID #: 1179
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J17

Harrisburg and Union Hill, and such waiver was a clear, unequivocal, and decisive act. Plaintiffs reasonably relied upon Defendant's waiver of any objections.

41. Defendant's recent communications have, however, asserted its intention of challenge those calculations.

42. Given these issues, a justiciable controversy exists and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

43. Plaintiffs, therefore, request a declaratory judgment from this Court that Defendant has waived its right to challenge Plaintiffs' Sales Proceeds calculations for the Old Bridge, Harrisburg and Union Hill properties.

## COUNT THREE

### (Declaratory Relief: Ratification)

44. Plaintiffs re-allege, incorporate, and adopt the allegations contained in the foregoing allegations of the Complaint.

45. Defendant ratified, or assented to, the acts and/or omissions of Plaintiffs. Defendant had full knowledge of the acts taken or omitted and expressly manifested an intention to be bound by such acts or omissions; retained the benefit of Plaintiffs' performance; and/or failed to repudiate Plaintiffs' performance and call to Plaintiffs' attention any purported issues where one would naturally be expected to do so.

46. Given these issues, a justiciable controversy exists and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute. As

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 11 of 20 PAGEID #: 180
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:29 PM-17CV010107
0D898 - J18

alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

47.     Plaintiffs, therefore, request a declaratory judgment from this Court that Defendant has ratified Plaintiffs' Sales Proceeds calculations for the Old Bridge, Harrisburg and Union Hill properties.

## COUNT FOUR

### (Declaratory Relief: Estoppel; Equitable Estoppel)

48.     Plaintiffs re-allege, incorporate, and adopt the allegations contained in the foregoing allegations of the Complaint.

49.     Defendant, by its acts or by silence when it ought to have spoken out, acted inconsistently with an intent to challenge Plaintiffs' Sales Proceeds calculations for the Properties, and thereby caused Plaintiffs to believe there were not such objections. Plaintiffs reasonably relied and acted upon such belief in continuing to close on the sale of properties, make calculations, escrow funds, and make additional investment and tax planning decisions.

50.     Given these issues, a justiciable controversy exists and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

51.     Plaintiffs, therefore, request a declaratory judgment from this Court that Defendant is estopped to challenge Plaintiffs' Sales Proceeds calculations for the Old Bridge, Harrisburg and Union Hill properties.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 12 of 20 PAGEID #: 1181
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J19

## COUNT FIVE

### (Declaratory Relief: Laches)

52. Plaintiffs re-allege, incorporate, and adopt the allegations contained in the foregoing allegations of the Complaint.

53. There was an unreasonable delay or lapse of time in Defendant's challenge to Plaintiffs' Sales Proceeds calculations for the Old Bridge, Harrisburg and Union Hill properties. There is no reasonable excuse for Defendant's delay, and Plaintiffs have been materially prejudiced by Defendant's delay.

54. Given these issues, a justiciable controversy exists and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

55. Plaintiffs, therefore, request a declaratory judgment from this Court that Defendant is estopped from challenging Plaintiffs' Sales Proceeds calculations for the Old Bridge, Harrisburg and Union Hill properties.

WHEREFORE, Plaintiffs demand judgment against Bank of America in the form of an Order declaring:

(1) the Sales Proceeds for English Village under the Assignments are calculated consistent with Plaintiffs calculation of Sales Proceeds;

(2) that Plaintiffs do not have any obligation to escrow any further funds as a result of the sale of English Village; and,

(3) Defendant is barred by the doctrines of waiver, ratification, estoppel, and/or laches to challenge Plaintiffs' calculations of Sales Proceeds for Old Bridge, Harrisburg and Union Hill.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 13 of 20 PAGEID #: 1182
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J20

Respectfully submitted,

/s/ Matthew S. Zeiger
Marion H. Little (0042679)
Matthew S. Zeiger (0075117)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-9900
Facsimile: (614) 365-7900
Email: zeigerm@litohio.com
little@litohio.com

720640

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 14 of 20 PAGEID #: 1183
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J21

Founded in 1852
by Sidney Davy Miller

# MILLER CANFIELD

Miller, Canfield, Paddock and Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
TEL (248) 879-2000
FAX (248) 879-2001
www.millercanfield.com

JAMES L. ALLEN
TEL (248) 267-3285
FAX (248) 879-2001
E-MAIL allenj@millercanfield.com

MICHIGAN: Ann Arbor
Detroit • Grand Rapids
Kalamazoo • Lansing • Troy
FLORIDA: Tampa
ILLINOIS: Chicago
NEW YORK: New York
CANADA: Windsor
CHINA: Shanghai
MEXICO: Monterrey
POLAND: Gdynia
Warsaw • Wroclaw

August 30, 2017

VIA EMAIL – zeigerm@litohio.com
AND FEDEX NEXT MORNING DELIVERY

Stanbery Harrisburg, LP
The Shoppes at Union Hill, LLC
Stanbery English Village, LP
P. Jonathan Meyer
Mark A. Pottschmidt
Raymond Brunt
c/o Matthew S. Zeiger
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, OH 43215

**NOTICE OF DEFAULT , REQUEST FOR DOCUMENTS and DEMAND FOR FURTHER ASSURANCES**

RE: Bank of America/Stanbery

Gentlemen:

We are writing to you on behalf of Bank of America ("Bank") concerning your obligations under the Assignment of Proceeds related to Stanbery Harrisburg, LP, The Shoppes at Union Hill, LLC, and Stanbery English Village, LP.

The Bank received Mr. Meyer's email of August 4, 2017 to Sara Allen (the "August 4 Email"), providing notice that Stanbery English Village, LP is selling its sole asset, a retail project located in North Wales, Pennsylvania, as "the final property involved in our settlement with Bank of America." Mr. Meyer's specific inquiry was to "advise if you [the Bank] have questions, and how you [the Bank] would like to proceed." The Bank does seek more information and has directions for you as set forth in this letter.

**EXHIBIT A**

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 15 of 20 PAGEID #: 1184
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J22

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Stanbery Harrisburg, LP  -2-  August 30, 2017
The Shoppes at Union Hill, LLC
Stanbery English Village, LP
P. Jonathan Meyer
Mark A. Pottschmidt
Raymond Brunt

1. **Stanbery Harrisburg, LP**

Stanbery Harrisburg, LP ("Harrisburg") and the Guarantors are in default of their obligations under each of the fifteen Assignments of Proceeds pertaining to Harrisburg. These defaults include, but are not limited to:

(a) The failure to provide proper written notice to the Bank including "at least ten (10) days prior to any Sale . . .documentation setting forth, in reasonable detail (Y) the material facts of the event constituting a 'Sale' and (Z) the Company and Assignor's calculation of the Sale Proceeds resulting from such Sale."[1] Guarantors' communications, if any, did not include all material facts of the Sale and otherwise failed to comply with the strict terms of the Assignments of Proceeds.

(b) The failure to pay to the Escrow Agent, Clean Title, Inc., the Allocated Percent of the Sales Proceeds as required under the terms of the Assignments of Proceeds. More particularly, Stanbery Harrisburg and the Guarantors have not paid a dime to the Escrow Agent from this $44,000,000 Sale.

The Allocated Percent is a number (percentage) which is clearly specified in each of the fifteen Assignments of Proceeds pertaining to Harrisburg.

"Sales Proceeds" is also unambiguously defined in each Assignment of Proceeds:

(i) "Sale Proceeds" means an amount equal to: (a) the cash and non-cash proceeds (including any cash received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received) received by the Company and/or the Assignor from a Sale, minus (b) any out-of-pocket costs (including, without limitation, reasonable and customary transaction costs associated with the Sale) incurred by the Company directly in connection with such Sale, including (i) income or gains taxes actually payable by the Company or Assignor as a result of any gain recognized in

---

[1] All capitalized terms not defined in this letter have their meaning set forth in the Assignments of Proceeds.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 16 of 20 PAGEID #: 1185
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J23

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Stanbery Harrisburg, LP  -3-  August 30, 2017
The Shoppes at Union Hill, LLC
Stanbery English Village, LP
P. Jonathan Meyer
Mark A. Pottschmidt
Raymond Brunt

> connection with such Sale, without regard to losses, deductions or credits unrelated to such Sale which might otherwise affect the actual taxes payable, and (ii) payment of the outstanding principal amount of, premium or penalty, if any, and interest on that certain indebtedness pursuant to that certain Open-End Mortgage, Security Agreement and Fixture Filing dated as of January 20, 2004, from the Company, as Borrower, for the benefit of LaSalle Bank National Association, as Lender, as amended, modified, assigned, replaced or substituted, that is required to be repaid under the terms of such indebtedness as a result of the Sale;

This language is clear and unambiguous. The calculations set forth in the August 4 Email to the Bank are not what was agreed. The Guarantors have improperly diverted monies properly due to the Escrow Agent and, ultimately, the Bank.

The Bank demands that the Guarantors pay the Allocated Percent of the Sales Proceeds from the Harrisburg Sale to the Escrow Agent within ten (10) days of the date of this letter.

2.  **The Shoppes at Union Hill, LLC**

The Shoppes at Union Hill LLC ("Union Hill") and the Guarantors are in default of their obligations under each of fifteen Assignments of Proceeds pertaining to Union Hill. These defaults include, but are not limited to:

(a) The failure to provide proper written notice to the Bank including "at least ten (10) days prior to any Sale . . .documentation setting forth, in reasonable detail (Y) the material facts of the event constituting a 'Sale' and (Z) the Company and Assignor's calculation of the Sale Proceeds resulting from such Sale." Guarantors' communications, if any, did not include all material facts of the Sale and otherwise failed to comply with the strict terms of the Assignments of Proceeds.

(b) The failure to pay to the Escrow Agent, Clean Title, Inc., the Allocated Percent of the Sales Proceeds as required under the terms of the Assignments of Proceeds. More particularly, Union Hill and the Guarantors have not paid a dime to the Escrow Agent from this $63,060,000 Sale.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 17 of 20 PAGEID #: 186
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J24

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Stanbery Harrisburg, LP  -4-  August 30, 2017
The Shoppes at Union Hill, LLC
Stanbery English Village, LP
P. Jonathan Meyer
Mark A. Pottschmidt
Raymond Brunt

We reiterate the balance of our statements made with respect to the Harrisburg Sale. Specifically, the Bank demands that the Guarantors pay the Allocated Percent of the Sales Proceeds from the Union Hill Sale to the Escrow Agent within ten (10) days of the date of this letter.

### 3. Stanbery English Village, LP

Based upon the Guarantors' prior defaults and your communication, it is readily apparent that Stanbery English Village, LP ("English Village") and the Guarantors presently intend to likewise breach the fifteen Assignments of Proceeds in proceeding with the Sale of English Village.

English Village and the Guarantors are required to provide to the Bank "documentation setting forth, in reasonable detail, the material facts of the event constituting a 'Sale.'" Based upon this contractual obligation and the August 4 Email, the Bank requests this documentation within three (3) days of the date of this letter, but not less than one (1) business day before closing on this Sale. Specifically, and at the minimum, the Bank requests the following:

1. A copy of the Sale and Purchase Agreement for the Sale.

2. The title commitment for the Sale.

3. The name, address and telephone number of both the title company and local title insurance agency providing title insurance for the Sale.

4. The pro forma closing statement for the Sale.

5. A proper calculation of the Sales Proceeds that complies with the clear and unambiguous terms of the Assignments of Proceeds.

You must cease and desist from further efforts to breach the Assignments of Proceeds. Each of you, and any entity or person who interferes with the Bank's rights under the Assignment of Proceeds agreements or assists you in any breach of these contracts, will be held liable to the full extent of the law.

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 18 of 20 PAGEID #: 187
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J25

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Stanbery Harrisburg, LP  　　　　　　-5-　　　　　　August 30, 2017
The Shoppes at Union Hill, LLC
Stanbery English Village, LP
P. Jonathan Meyer
Mark A. Pottschmidt
Raymond Brunt

　　　　We demand that each of you immediately assure the Bank and us, in writing, that you will produce the documents requested and will fully comply all of the terms and provisions of the Assignments of Proceeds.

　　　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　　　Miller, Canfield, Paddock and Stone, P.L.C.

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　James L. Allen

JLA/dmt

cc:　　Bank of America

29784910.5\145719-00231

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 19 of 20 PAGEID #: 1188
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J26

# ZEIGER, TIGGES & LITTLE LLP

TELEPHONE: (614) 365-9900
FACSIMILE: (614) 365-7900

ATTORNEYS AT LAW
3500 HUNTINGTON CENTER
41 SOUTH HIGH STREET
COLUMBUS, OHIO 43215

WRITER'S DIRECT NUMBER:

(614) 365-9905

August 31, 2017

**VIA EMAIL AND FEDERAL EXPRESS**

James L. Allen, Esq.
Miller Canfield
840 West Long Lake Road, Suite 150
Troy, Michigan 48098

Re: <u>Stanberry/Bank of America</u>

Dear Mr. Allen:

I am in receipt of your letter to Messrs. Meyer, Pottschmidt and Brunt. Needless to say, I am extremely surprised to receive your letter for several reasons:

First, despite our efforts, your colleague Heather Olson, and your client have repeatedly refused to communicate with me and our clients. As you know, my client has been in contact with your client for years about the distribution and final closing of the escrowed funds.

Indeed, I have been personally in contact with Ms. Olsen for nearly a year about this issue. I have provided her background and significant information regarding the underling documentation and transactions. She even requested a meeting with a business person from California because her client "did not understand the deal." Although we agreed to host a meeting, she was never able to provide a date for conducting a meeting. And, recently, I have tried many times over the past few weeks to contact Ms. Olsen but, except for her emails delaying a response, we have received zero substantive response. Now, after receiving no response, your client has the audacity, in your letter, to express great urgency and falsely suggest that my clients are in default.

Second, you suggest that my clients have been less than forthcoming with information. Nothing could be further from the truth. Your client previously requested information. With the exception of the information it was not entitled to under the underlying agreements, the requested information was provided in February 2017—nearly six month ago. My clients went above and beyond to assist Ms. Olson in piecing together the deal given her concession that the bank was no longer using Mr. Steinberg as counsel and everyone involved in the deal from the your client's side was no longer employed by the bank. Our clients are willing to continue to timely provide documents your client requests that fall within the scope of the agreement. But please do not use your client's lack of institutional knowledge and record keeping as an excuse to cast unfair aspersions at my clients.

**EXHIBIT B**

Case: 2:18-cv-00218-SDM-KAJ Doc #: 11 Filed: 03/14/18 Page: 20 of 20 PAGEID #: 1189
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Nov 13 2:25 PM-17CV010107
0D898 - J27

James L. Allen, Esq.  
August 31, 2017                          ZEIGER, TIGGES & LITTLE LLP  
Page 2

      Third, your letter claims that my clients are in default by allegedly not escrowing sufficient funds. While your letter generically states that the calculation is clear and unambiguous, your letter does not state how my clients' calculations are incorrect and what your client contends they should be. These are the same calculations used throughout the existence of these agreements. With the sale of the each property, the same formula has been utilized and provided to your client without objection. Indeed, in each instance, your client released its security interest in the property after receiving these calculations. Simply put, the calculations are consistent with both the plain language of the agreements and the parties' course of conduct. Additionally, your client has waived all objections and is otherwise estopped from seeking to impose a formula—one inconsistent with formula mutually agreed upon the parties and expressly memorialized in the agreements.

      The bottom line is that my clients are not in default. They have applied the required calculations, have met their obligations and the belated suggestion to the contrary is nothing more than bad faith on behalf of your client and entirely inconsistent with the position taken by your own firm over the past year.

      Should you wish to discuss this matter further or should you wish to meet to discuss a final resolution with respect to the escrowed funds as Ms. Olson promised months ago, please let me know. You should understand, however, that our clients' patience on this matter is wearing thin. They are not content with the bank simply prolonging a discussion that could have been and should be resolved.

                                                Very truly yours,

                                                Matthew S. Zeiger