# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| P. JONATHAN MEYER, et al., | : |
| Plaintiffs/Counter-Defendants, jointly and severally with Third-Party Defendants, | : Case No.: 2:18-cv-218 <br> : <br> : Judge George C. Smith <br> : Magistrate Judge Kimberly A. Jolson |
| v. | : |
| BANK OF AMERICA, N.A., | : |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff, | : |
| v. | : |
| STANBERY ENGLISH VILLAGE, LP, et al., | : |
| Third-Party Defendants, jointly and Severally with Counter-Defendants. | : |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Quash or Modify Subpoena Pursuant to Rule 45(d)(3) and for Protective Order Pursuant to Rule 26(c)(1) (Doc. 34). For the reasons that follow, the Motion is **DENIED**.

## I.  BACKGROUND

"Plaintiffs are partners in numerous real estate development companies." (Doc. 11, ¶ 5). Third-Party Defendants are related companies through which Plaintiffs "developed numerous shopping centers across the country[.]" (*Id.*). From 2004 to 2007, Third-Party Defendants obtained a number of loans from Defendant to be used for the construction and operation of several shopping centers. (*Id.* ¶¶ 8–9). Plaintiffs were guarantors for those loans. (*Id.* ¶ 10).

In 2008, the shopping centers operated by Third-Party Defendants began experiencing financial difficulties. (*Id.* ¶ 11). Plaintiffs entered into discussions with Defendant to negotiate an agreement (the "Settlement Agreement") to resolve the outstanding loans and guarantees. (*Id.* ¶ 12). "Specifically, Defendant agreed that in exchange for resolving the outstanding loans and guarantees it would accept the potential to receive a small percentage of net proceeds from each Plaintiffs' [sic] interest" in four properties. (*Id.* ¶ 13). The parties executed the Settlement Agreement in September 2010. (*Id.* ¶ 16).

Over the next several years, Plaintiffs sold some of those properties and purportedly paid Defendant the percentage of net proceeds from each Plaintiff's interest in those properties consistent with the Settlement Agreement. (*Id.* ¶ 22). After the sale of several of those properties, in 2017, Defendant challenged Plaintiffs' calculation of proceeds owed to it and asserted that Plaintiffs breached the Settlement Agreement. (*Id.* ¶ 27).

Unable to resolve the dispute through negotiations, Plaintiffs filed a Complaint for Declaratory Relief (Doc. 1-1) in the Franklin County Court of Common Pleas on November 13, 2017. On March 14, 2018, Defendant removed this action to federal court. (Doc. 1). Plaintiffs' Complaint seeks a declaratory judgment that they properly paid Defendant the amount required by the Settlement Agreement for the sale of certain properties. (*See generally* Doc. 11). Defendant has filed a Counterclaim (Doc. 4) raising claims of breach of contract and violation of the Ohio Uniform Fraudulent Transfer Act.

The parties have been engaged in written discovery and document production over the past year. After reviewing Defendant's production of documents, Plaintiffs allegedly determined that email communications were missing from certain custodians and for certain relevant time periods, including the time period surrounding the negotiation of the Settlement Agreement.

(Doc. 37 at 2–3). In response to a deficiency letter, Defendant informed Plaintiffs that its primary negotiator of the Settlement Agreement, Michael Olson, had left the company in 2015 and that Defendant did not retain any of Mr. Olson's emails after his departure. (Doc. 37-1 at 52–53). Unable to obtain some of the documents it sought from Defendant, Plaintiff subsequently subpoenaed Keating Muething & Klekamp, PPL ("Keating Muething")—Defendant's counsel during the negotiation of the Settlement Agreement—for documents and communications related to the Settlement Agreement or the instant action. (*See* Doc. 34-2 (the "Subpoena")).

Keating Muething agreed to produce responsive documents subject to Defendant's review for privilege. (Doc. 37-1 at 56). Defendant objected to the Subpoena, arguing that it was improper because it sought information subject to attorney-client privilege. Plaintiffs disagreed, emphasizing that they were requesting only that non-privileged, responsive documents be produced and that Defendant produce a privilege log for any documents to which it asserted the privilege applied.

Unable to resolve their dispute through the meet and confer process, Defendant filed the instant Motion on October 5, 2018. Plaintiffs filed their Response in Opposition (Doc. 37) on November 5, 2018, and Defendant filed its Reply (Doc. 38) on November 11, 2018. The Motion is now ripe for resolution.

## II. MOTION TO QUASH

### A. Standard of Review

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Fed. R. Civ. P. 45. It permits parties in legal proceedings to command a non-party to, among other things, produce documents. Fed. R. Civ. P. 45(a)(1). Upon a timely motion to quash, a court

"must quash or modify a subpoena" that "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citing *White Mule Co. v. ATC Leasing Co. LLC*, 2008 WL 2680273, at *4 (N.D. Ohio June 25, 2008)).

**B. Analysis**

Defendant requests that the Court quash the Subpoena on the grounds that it (1) seeks to discover privileged attorney-client communications and (2) is unduly burdensome. (Doc. 34 at 5–7). In the alternative, Defendant argues, the Subpoena "should be modified, and a protective order entered to protect the Bank's interest in the privileged information and prohibit the Guarantors' duplicative and non-proportional discovery." (*Id.* at 6). In its view, "[t]he Court should limit the Subpoena to only require Keating Muething to produce communications between Keating Muething and Guarantors located in the file associated with the Transactional Documents." (*Id.*).

The Subpoena directs Keating Muething to produce documents and communications related to the Settlement Agreement and the instant lawsuit. (Doc. 34-2 at 5–6). Relevant here, in the section titled "PRIVILEGED OR PROPRIETARY MATTER," the Subpoena contains instructions for withholding privileged materials:

> If any request for documents is deemed to call for the production of privileged or work product materials and such privilege or work product is asserted, identify in writing each document so withheld and provide the following information:
>
> 1. the reason for withholding the document;
>
> 2. a statement of the basis for the claim of privilege, work product or other ground of non-disclosure;

- 4 -

3. a brief description of the document, including:

   a. the date of the document;

   b. number of pages, attachments, and appendices;

   c. name of its author, authors, or preparers and an identification by employment and title of such person;

   d. the name of each person who was sent, shown, or received blind or carbon copies of the document, has had access to or custody of the document, together with an identification of such person;

   e. the present custodian; and

   f. the subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation.

(*Id.* at 4–5).

   *1. Privilege*

Rule 45 requires that a court quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). As an initial matter, the Court notes that Defendant offers conclusory statements in support of its claim of privilege. (*See* Doc. 34 at 5; Doc. 38 at 6–7). Some district courts in this Circuit have held that a "blanket assertion of . . . privilege is insufficient" to justify granting a motion to quash. *See, e.g.*, *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6940735, at *4 (W.D. Ky. Aug. 21, 2017) (considering law firm's motion to quash and holding that an "examination of the motion to quash immediately reveals that the law firm has made a blanket assertion of the attorney-client privilege without providing any privilege log as required by Rule 26(b)(5). Such a blanket assertion of the privilege is insufficient."). While the Court does not believe Defendant was required to prepare a privilege log to

substantiate its motion to quash, as the moving party, its failure to provide evidence supporting its privilege argument weighs against granting its Motion here. *See Hendricks*, 275 F.R.D. at 253 ("The party seeking to quash a subpoena bears the ultimate burden of proof." (citing *White Mule Co.*, 2008 WL 2680273, at \*4)).

More importantly, Plaintiffs' Subpoena explicitly provides for the withholding of privileged materials. (*See* Doc. 34-2 at 4–5 (providing instructions on withholding privileged or proprietary matter)). Indeed, in Plaintiffs' request expressly targeting communications between Defendant and Keating Muething, the Subpoena provides, "[t]o the extent you assert that any such communications are subject to one or more privileges, please Identify each document as requested above in the section titled 'Privileged or Proprietary Matter.'" (Doc. 34-2, RFP 6). In other words, the Subpoena does not require the production of privileged material. As a result, Rule 45(d)(3)(A)(iii) is inapplicable here.

Defendant warns that denying its Motion and requiring the production of a privilege log would cause the very problem Rule 45 is meant to avoid—the disclosure of privileged information. (Doc. 38 at 8). Specifically, it argues that by cataloguing its communications with Keating Muething, Plaintiffs could "reverse engineer[]" the substance of each attorney-client communication. (*Id.*).

In the Court's view, Defendant's concern is overstated. Had Defendant retained email from the relevant custodians who communicated with Keating Meuthing during the time period surrounding the Settlement Agreement, there is no question that Defendant would have been obligated to log those communications on a privilege log in response to Plaintiffs' discovery requests. That privilege log would have included:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege."

See *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (citation omitted). In other words, Defendant would have been obligated to prepare a privilege log that would be subject to the same concerns about Plaintiffs' "reverse engineering of attorney-client communications," (Doc. 38 at 8). For this reason, Defendant's argument on this point is not persuasive, and the Court concludes that the subpoena does not seek privileged information.

### 2. *Undue Burden*

Rule 45 also requires a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "Undue burden is to be assessed in a case-

specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018), *reh'g denied* (May 17, 2018), *cert. denied sub nom. New Prod. Corp. v. Dickinson Wright, PLLC*, 139 S. Ct. 289 (2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d at 251 (quoting *Am. Elec. Power Co.*, 191 F.R.D. at 136). Ultimately, "[i[f the subpoenaed nonparty asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a clearly defined and serious injury." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 224 (E.D. Mich. 2016) (citation, internal quotation marks, and ellipses omitted).

Defendant has not met its burden here. First, the Court questions whether Defendant has standing to move to quash the subpoena on undue burden grounds. Rule 45 requires that the party issuing the subpoena "take reasonable steps to avoid imposing undue burden or expense on a person *subject to the subpoena*." Fed. R. Civ. P. 45(d)(1) (emphasis added). *See also Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010) ("Rule 45 focuses on the burden imposed on the recipient of the subpoena." (citing *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008)). As a result, "this Court and another district court in this circuit have previously concluded that only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden." *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013)

(collecting cases). *See also Clair v. Schlachter*, No. 213CV804KJMEFBPTEMP, 2016 WL 2984107, at *5 (E.D. Cal. May 23, 2016) ("A party's objection that a subpoena issued to a non-party seeks irrelevant information or imposes an undue burden on the non-party is not grounds on which the objecting party has standing to assert, especially where the non-party, itself, has not objected." (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636–37 (C.D. Cal. 2005)); *Glacier Films (USA), Inc. v. Does 1-29*, No. 15-CV-4016, 2015 WL 8989217, at *2 (N.D. Ill. Dec. 15, 2015) ("A defendant cannot claim an undue burden from a subpoena directed at a third party."); *Zoobuh, Inc. v. Rainbow Int'l Corp.*, No. 2:14-CV-00477-DN, 2015 WL 2093292, at *2 (D. Utah May 5, 2015) (collecting cases and holding that, "[e]ven where a party has standing to quash a [third-party] subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." (citation and internal quotation marks omitted)). Keating Muething, not Defendant, is the recipient of the Subpoena, and therefore, it appears that Defendant does not have standing to raise an undue burden challenge to the Subpoena.

This makes sense as a practical matter. Keating Meuthing bears the burden of responding to the Subpoena, including collecting and reviewing the relevant ESI and preparing it for production. Keating Muething has not moved to quash the Subpoena. Rather, after raising certain standard objections, it agreed with Plaintiffs to collect relevant ESI and produce it subject to a privilege review by counsel for Defendant. (Doc. 37-1 at 56). Keating Muething has declined to make an undue burden argument, and Defendant cannot make it for it.

Second, even assuming that Defendant could raise an undue burden argument, it has failed to show "that disclosure will cause it a clearly defined and serious injury." *Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. at 224 (citation, internal quotation marks, and ellipses omitted). While Defendant argues that "enforcing the subpoena would impose a

significant burden on" it, it offers little support for this assertion. (Doc. 38 at 10). If blanket assertions of privilege are insufficient to quash a subpoena, so too are conclusory statements of burden.

Here, Defendant will be required to conduct a privilege review of 2,700[1] emails and create a corresponding privilege log. (*Id.*). Based on the Court's experience with cases with similar amounts-in-controversy, this is a relatively limited burden. That is particularly true here, as discussed above, because Defendant would have been obligated to review those emails and create a privilege log in response to Plaintiffs' discovery requests already had it retained email from the relevant custodians.

Defendants' reliance on two decisions from the United States District Court for the District of Columbia is misplaced. (*See* Doc. 38 at 11–12). In *In re Application for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding ("In re § 1782 Application")*, petitioners—the majority shareholders of a Russian oil company, Yukos—had engaged in complex litigation in civil courts throughout Europe with the Russian Federation regarding its alleged "expropriation" of Yukos. 2017 WL 3708028, at *1 (D.D.C. Aug. 18, 2017), *reconsideration denied sub nom. In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1 (D.D.C. 2017). *See also Hulley Enters. v. Russian Fed'n*, 211 F. Supp. 3d 269, 272–76 (D.D.C. 2016) (summarizing history of parties' litigation). Respondent, an American law firm, represented Rosneft—an oil company in which the Russian Federation was the majority stakeholder—before one of those courts in Armenia. *In re § 1782 Application*, 2017 WL 3708028 at *1. After

---

[1] At one point in its Reply, Defendant hints that there are "potentially 8,792 responsive records for review." (Doc. 38 at 4). Defendant, however, otherwise relies on the fact that there are 2,700 responsive emails. (*See, e.g., id.* at 5, 10). The Court does the same and additionally notes that even if there were "8,792 responsive records for review," the Court would come to the same conclusion.

petitioners' $50 billion arbitration award was overturned by a Dutch court, they moved the District Court for an order under 28 U.S.C § 1782 to compel the respondent-law firm to produce documents and appear for a deposition regarding its alleged efforts to manipulate Armenian courts as part of a scheme to reverse the arbitral award. *Id.* at *2.

Respondent opposed the application, arguing, in part, that the requested discovery was irrelevant and unduly burdensome. *Id.* at *4. The district court agreed, concluding that the application should be denied because "the relevance of the requested discovery to the Dutch appeal proceeding is tenuous and sufficiently in question, and the burden on the respondents sufficiently onerous." *Id.* Absent a showing of "moderate relevance," the court concluded that the risk that proposed discovery would uncover aspects of strategy and the potential for litigation regarding privilege was "too significant" to permit discovery to proceed. *Id.* at *5.

Asking the court to reconsider its decision, petitioners argued that the prior order "was predicated on an unsupported assumption of privilege." *In re § 1782 Application*, 286 F. Supp. 3d 1, 5 (D.D.C. 2017). The court rejected this argument and reaffirmed its original decision, "given both the nature of the petitioners' discovery demands, which plainly target privileged communications and documents between the respondents and its long-standing client, and the respondents' declaration detailing the nature of their attorney-client relationship with Rosneft and the burdens subpoena compliance would engender." *Id.* at 5–6. In support of this conclusion, the court opined:

> when a discovery request demands production of an attorney's records in connection with representation of a client, invocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log. Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid.

*Id.* at 7 (collecting cases).

In a more analogous context, the court in *Dell Inc. v. DeCosta* considered a third-party subpoena served on a law firm. 233 F. Supp. 3d 1 (D.D.C. 2017). In the United States District Court for the Eastern District of Virginia, Audio MPEG, Inc. (Audio MPEG), and others, sued Dell, Inc. ("Dell") for alleged infringement of certain patents. *Id.* at 2. Dell, in turn, served Audio MPEG's licensing counsel, Frank DeCosta and other attorneys at his firm ("DeCosta"), with a third-party subpoena seeking documents and deposition testimony regarding certain licensing negotiations. *Id.* at 2. DeCosta objected and argued that Dell's discovery requests imposed an undue burden because (1) the requested information was available from a more convenient source, Audio MPEG, and (2) the subpoena risked disclosure of privileged information. *Id.* at *2–3. The district court agreed, finding that "[s]uch open document requests, served on prior counsel, would impose an undue and disproportionate burden on Defendants to prepare a privilege log of the thousands of documents that Defendants could reasonably be expected to 'possess' after a decade of Audio MPEG representation but most of which would be protected by the attorney-client privilege or attorney work-product doctrine." *Id.* at *3–4.

In both decisions above, the district court emphasized the burden of preparing a privilege log for potentially thousands of documents. But, in the Court's view, whether the preparation of a privilege log is actually unduly burdensome depends on the facts and circumstances of each individual case. *See In re: Modern Plastics*, 890 F.3d at 251 ("Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" (quoting *Am. Elec. Power Co.*, 191 F.R.D. at 136)). Here, even in Defendant's account, the universe of potentially

privileged communications is limited to 2,700 emails. (Doc. 38 at 10). With current discovery technology, the review of these emails and the creation of a corresponding privilege log is not unduly burdensome, particularly given (1) the amount in controversy in this case, (2) the importance of the issues at stake, and (3) the fact that the discovery Plaintiffs requested here is, at least, of "moderate relevance," *In re § 1782 Application*, 2017 WL 3708028 at *5, to their claims and defenses regarding the Settlement Agreement.

## III. MOTION FOR PROTECTIVE ORDER

### A. Standard of Review

A district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016), *cert. denied sub nom. Fears v. Kasich*, 138 S. Ct. 191, 199 L. Ed. 2d 128 (2017) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)). Ultimately, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x. 498, 500 (6th Cir. 2001) (citation omitted).

### B. Analysis

For similar reasons as with respect to the Motion to Quash, Defendant has failed to meet its burden to justify the entry of a protective order. Defendant has generally relied on "stereotyped and conclusory statements," *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (citation and internal quotation marks omitted), in support of its argument. But in so relying, it has failed to establish specific prejudice or harm that will result absent a protective order. *Id.* As a result, Defendant's request for the entry of a protective order is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Quash or Modify Subpoena Pursuant to Rule 45(d)(3) and for Protective Order Pursuant to Rule 26(c)(1) (Doc. 34) is **DENIED**.

IT IS SO ORDERED.


Date: December 7, 2018 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE